**ALBEE GODFREY WHALE CREEK CO., Inc., v. PERKINS, State Industrial Commissioner, et al.**

District Court, S. D. New York.
March 14, 1933.

Paul Koch, of New York City, for complainant.

John J. Bennett, Jr., of New York City, for defendants.

James G. Mitchell, Edward Gluck, and J. Frank Phillips, all of New York City, amici curiæ.

Before L. HAND, Circuit Judge, and BONDY and PATTERSON, District Judges.

L. HAND, Circuit Judge.

The cause comes up upon two motions; one by the plaintiff, for an injunction, pendente lite, in a suit in equity to enjoin the Industrial Board of New York from proceeding to hear certain claims for workmen's compensation; the other by the defendants, to dismiss the bill for insufficiency in law. The plaintiff was a sub-contractor, doing work upon a prison for the City of New

York on Rikers Island in the East River; the contractor in chief was the P. J. Carlin Construction Company. As the workmen did not live on the island, it was necessary to carry them back and forth from Manhattan across navigable waters. The Carlin Company for this purpose made a contract with one Forsyth and others, the owners of a steamer, by which they agreed to ferry the men, who were each to pay them ten cents a trip. The Carlin Company was to make up the daily difference between the amount received and sixty dollars, and to take any surplus to make up deficits which it had had to pay earlier. While carrying a shipload of workmen, among whom were many of the plaintiff's employees, the steamer blew up in the stream and substantially everyone on board was killed or wounded. Some of the injured, and the administrators of the dead, have brought actions against the plaintiff, but with these this suit is not concerned; it is filed to enjoin further proceedings begun by the Industrial Board, which has sent out notices to the plaintiff, to the injured and to representatives of the dead employees, of a hearing to determine its jurisdiction under the New York Compensation Law. The plaintiff was insured in the State Insurance Fund, and stood under no liability to pay any awards, but it was a member of a group of employees out of whose premiums, under section 92 of the act (Consol. Laws N. Y. c. 67), a fund has been accumulated as security against catastrophes of the kind here in question. This reserve fund amounts to $38,000, in which the plaintiff has an interest of undisclosed amount; if the proceedings result in awards, it will be exhausted by their payment.

■ The first question is whether we have jurisdiction over the cause at all. Section 380 of title 28, U. S. Code (28 USCA § 380), requires us not only to act when the constitutionality of a state statute is in question, but also when an unconstitutional "order" is to be enforced by a board or commission of the state. The Board here has issued notices to the plaintiff and to all the claimants to attend a hearing on the point of its jurisdiction. If this were on application of either party it would be an "order," for the act so calls it (section 20 of the N. Y. Workmen's Compensation Law [Consol. Laws N. Y. c. 67]). Apparently the Board issued the notice sua sponte, but this in our judgment makes no difference; it was a direction to the plaintiff to appear and present its evidence, and would have been followed by an award. Certainly it is similar to orig-

inal process in an action or a suit. It appears to us that the situation is within the section. Oklahoma Natural Gas Co. v. Russell, 261 U. S. 290, 43 S. Ct. 353, 67 L. Ed. 659.

■ Proceedings by the Board ending in an award are judicial under the law of that state. Its findings are conclusive, section 20, and though reviewable in point of law, section 23, they are so in nothing else; they are the last decision upon issues arising inter partes and ending in an award of money. The Court of Appeals has declared them res judicata in other suits between the parties. Royal Indemnity Co. v. Heller, 256 N. Y. 322, 176 N. E. 410. This being true, the plaintiff may intervene at once without waiting till the claimants' rights have been finally decided by the state courts. Bacon v. Rutland R. R. Co., 232 U. S. 134, 34 S. Ct. 283, 58 L. Ed. 538; Prendergast v. N. Y. Telephone Co., 262 U. S. 43, 43 S. Ct. 466, 67 L. Ed. 853; R. R. Commission v. Duluth St. Ry. Co., 273 U. S. 625, 47 S. Ct. 489, 71 L. Ed. 807. The case is not therefore within Prentis v. Atlantic Coast Line, 211 U. S. 210, 29 S. Ct. 67, 53 L. Ed. 150; or Porter v. Investors' Syndicate, 286 U. S. 461, 52 S. Ct. 617, 76 L. Ed. 1226, where the party aggrieved ordinarily must wait till administrative remedies are concluded before seeking a federal tribunal. Indeed, were this not true, he would have no recourse at any time to a federal tribunal except by appeal to the Supreme Court from the final decision of the state court.

■ The merits of the bill, however, we decline to consider on the motion to dismiss under Equity Rule 29 (28 USCA § 723). This is a substitute for a demurrer, and while it is common to test the bill by it, when the questions are clearly presented upon which the equity of the cause depends, that is by no means as of course. The issues may be of such grave consequence that it is better not to decide them without full consideration of the facts. Kansas v. Colorado, 185 U. S. 125, 22 S. Ct. 552, 46 L. Ed. 838; Wisconsin v. Illinois, 270 U. S. 634, 46 S. Ct. 354, 70 L. Ed. 772. In general the question rests in the discretion of the court, which will decline to pass upon the bill when it thinks it more convenient and just to reserve the question for trial. American Creosote Works v. Powell, 298 F. 417, 422 (C. C. A. 5); Dixon v. Hopkins, 56 F.(2d) 783 (C. C. A. 5); Rankin v. Miller (C. C.) 130 F. 229; Snyder v. DeForest Wireless Tel. Co. (C. C.) 154 F. 142, 144; Smith v. Bow-

ker Torrey Co. (D. C.) 199 F. 985; Ralston Steel Car Co. v. National Dump Car Co. (D. C.) 222 F. 590; Oneida Community, Limited, v. Fouke Fur Co. (D. C.) 286 F. 757; White v. Federal Radio Com. (D. C.) 29 F. (2d) 113; Street, Federal Equity Practice, § 963. There are good reasons here why we should not decide the merits at this stage of the case. As we shall show, there is no present reason to intervene by injunction, and there never may be. The equity of the bill depends on how the Board proceeds; if the plaintiff is not required to submit to undue prolixity of litigation, the questions can all be properly decided in the state courts, normally the proper tribunals. It is always a delicate function to assume jurisdiction over the accredited public authorities of a state, and to take from its courts the decision of matters primarily theirs. We should have to declare ourselves on the merits of the controversy, merely upon those allegations which the plaintiff chose to make; and our declaration, if we denied the motion, would not be res judicata, since it would not be a final judgment; yet it might well be an embarrassment in the conduct of the cases by the Board, and upon the appeals; and indeed it might involve a conflict between the two jurisdictions, the possibility of which we should avoid while we can. Moreover, if there turn out to be a valid waiver under section 113, our decision might be brutum fulmen anyway. Again, the state courts may hold that the men while on the boat were not in the course of their employment. Since there are therefore good reasons why at this time we should not decide 'what may later turn out to be moot questions, and every reason why we should not, we will deny the motion of the defendants without prejudice, and leave the validity of the bill to be decided, if at any time it becomes necessary to rule upon it.

As to the motion for an injunction pendente lite, there is no reason for it, unless there be some present and pressing danger to the plaintiff. Even though it may have recourse to a federal court whenever there is no legal remedy, it must still show that failure to enjoin the proceedings will expose it to a prejudice which equity recognizes as sufficient. This is established by many decisions of the Supreme Court, in some of which the proceedings to be enjoined were judicial, strictissimi juris. Cavanaugh v. Looney, 248 U. S. 453, 39 S. Ct. 142, 63 L. Ed. 354; Massachusetts State Grange v. Benton, 272 U. S. 525, 47 S. Ct. 189, 71 L. Ed. 387; Gilchrist v. Interborough Transit Co., 279 U. S. 159, 49 S. Ct. 282, 73 L. Ed. 652; Northport Power & Light Co. v. Hartley, 283 U. S. 568, 51 S. Ct. 581, 75 L. Ed. 1275; Matthews v. Rodgers, 284 U. S. 521, 52 S. Ct. 217, 76 L. Ed. 447; Stratton v. St. L. S. W. R. Co., 284 U. S. 530, 52 S. Ct. 222, 76 L. Ed. 465. The Workmen's Compensation Law, (§ 23), gives an appeal to the employer from the Board to the Appellate Division, and thence to the Court of Appeals; those courts are equally charged with observing the United States Constitution as we. If the question can be presented to them unimpeded, and without harassing the plaintiff by the defence of a multiplicity of suits, we can see no equity to justify our interposition. The plaintiff answers that the Board has already instituted proceedings upon all possible claims, and that it must defend in all. Next, that the procedure before it is most informal, (section 118), and the constitutionality of its jurisdiction may be cloaked by its findings of fact, which being conclusive upon the state courts, (section 20), will prevent consideration of the point upon the appeals. As to each it is enough that the danger is as yet speculative, and that the time has not come to fend against it. Even though we enjoined the Board, nevertheless we should allow the claims to be filed, and anything else to be done that was necessary to protect the claimants against the statute of limitations. In other respects no doubt we would stop the proceedings until we had decided the main issue ourselves. But if the Board itself selects one claim as a test and does not proceed with the others until the Court of Appeals has decided the question, the results will be substantially the same. Such a course will not involve the plaintiff in a multiplicity of suits. There is no reason at the moment to assume that the Board means to act otherwise. It has merely sent out notices to the plaintiff and to all claimants of a hearing to consider its jurisdiction; if it appears, as it must, that the same facts determine that question in all the cases in which there can be an award, we see no reason to suppose that it will insist upon a separate trial in each upon that point. Certainly if the plaintiff agrees that they are alike, the Board is not likely to put it gratuitously to the labor of a separate record for each claim; or to press to a conclusion the liquidation of any award till its jurisdiction is settled.

The second ground is even more tenuous.

While the Board may indeed proceed informally, and is not bound by the rules of evidence, it is difficult to see how this freedom can mask the undisputed facts on which its jurisdiction turns. The critical facts as to jurisdiction are the place where the injuries occurred, the existence of the relation of master and servant, the character of the services, and whether the injury arose out of or in the course of the employment, section 10. The first is indisputable; the plaintiff alleges the second in the bill; there is no reason to suspect that the facts on which the third and fourth depend will not be fairly stated. We should be obliged to impute to the Board a disposition to avoid any review of its determination, should we assume that it would shroud the issue by its findings. If the plaintiff comes to a federal court only because it supposes the chance of a favorable outcome better than in the state courts, that is an interest which we, least of all, may recognize. Later developments may change the situation; the Board may insist upon the litigation of the issue of jurisdiction in a number of claims, being unwilling to await the determination of the state courts; or it may press some to liquidation. Again, it is conceivable, though hardly, that in a test case the issue may be so concealed by the findings of fact that the plaintiff can not raise the point on appeal. These are remote possibilities; we decline to foreshadow what, if anything, we ought to do, should they become actual. It is enough for the disposition of this motion that the plaintiff now cries out before it has been hurt.

Motion to dismiss the bill denied, without prejudice.

Motion for a temporary injunction denied; ex parte stay vacated.