## MELTON v. RAILROAD COMMISSION OF TEXAS et al.
### No. 509.

District Court, W. D. Texas, Austin Division.
April 29, 1935.

Russell Allen, and W. B. Harrell, both of Dallas, Tex., and J. M. Deavenport, of Kilgore, Tex., for complainant.

William McCraw, Atty. Gen., W. J. Holt and William C. Davis, Asst. Attys. Gen., and Claude Pollard, of Austin, Tex. (Maurice Cheek, of Fort Worth, Tex., of counsel), for defendant railroad companies.

G. B. Ross, of Galveston, Tex., for G. C. & S. F. Ry. Co.

R. H. Kelley, of Houston, Tex., for trustees, International-Great Northern R. Co.

Mastin G. White, of Washington, D. C., for Atty. Gen. of the United States.

HUTCHESON, Circuit Judge, and WEST and KENNERLY, District Judges.

PER CURIAM.

By bill filed March 26th, plaintiff complains of the Commission's so-called tender or permit rules, requiring persons proposing to ship petroleum products to show that they were processed from legally produced oil. He sues the Railroad Commission and

the Attorney General primarily, and incidentally joins in the suit railroad companies which he alleges have refused to ship his oil because of threats of prosecution if they do it without a Commission permit. He seeks an interlocutory and a final injunction, restraining the Commission and the Attorney General from enforcing against him the regulations and the statutes they purport to rest on, because of the claim that the statutes of the state and the orders of the Commission are unconstitutional as violative of the Fourteenth Amendment.

At the hearing before a three-judge court, organized under 28 USCA § 380, because of this claim and because of the prayer for an interlocutory injunction against state officers, it was agreed that the whole matter of his bill should be considered, and if any of the relief sought was not incidental to the relief against the state officers, so as not to be properly before the three-judge court but independent of it, that should be considered as submitted to and to be decided by the District Judge. Amazon Petroleum Corp. v. Railroad Comm. (D. C.) 5 F. Supp. 639; Pittsburgh & W. Va. Ry. v. U. S., 281 U. S. 479, 50 S. Ct. 378, 74 L. Ed. 980; Id. (D. C.) 41 F. (2d) 806.

Plaintiff alleges that he is the owner of approximately 22,000 barrels of fuel oil which he acquired by purchase on or about December 5, 1934. That at that time, though the statute and the regulations of the Commission did prohibit the movement of illegally produced crude, there was neither statute nor Commission order in effect prohibiting the movement of products of crude oil which had not been legally produced, or requiring persons to obtain from the Commission a permit or tender to ship or handle products of crude petroleum. That in September, 1934, the Legislature, by amendment effective December 25, 1934, in terms extended the prohibition of the act to products of illegally produced crude, and on December 5th, by rule effective December 10th, the Commission required persons holding products of crude petroleum to obtain a permit before shipping or handling them, upon an application showing that they were not the products of illegally produced oil. That after December 25th, when the statute became effective, the Commission repromulgated its rules of February 1, 1934. These regulations and rules require persons offering to ship products of crude petrole-

um to show that they were processed from crude oil produced in compliance with the statutes of the state and the rules of the Railroad Commission. He alleges that he can sell his products but for the statutes and the rules and regulations, but because of them and the threats of prosecution by the statutory enforcement officers, he cannot move nor handle them. That the railroad companies to whom he has recently applied to ship these products have refused on account of the statute and the Commission's regulations and orders to do so.

The bill does not allege that the products it refers to were processed from crude petroleum legally produced, nor does it allege that he has made any effort to or could show that they were. There was a motion to dismiss on the ground (1) that the bill shows on its face that plaintiff has neither complied, nor attempted to comply, with the Commission's regulations, nor does it show that the fuel oil he holds is the product of legally produced oil, and that therefore his bill is without equity. (2) There was a plea in bar that in a suit in a state court in which plaintiff had set up the same matters, and by virtue of a temporary injunction obtained there had shipped a great part of the fuel oil the bill refers to, a general demurrer had been sustained, and plaintiff neither amending nor appealing, the judgment of dismissal had become final. (3) There was a plea that in that suit, by virtue of the temporary injunction, plaintiff had shipped out all of the crude products he had any claim to, and there is no equity in his bill, for he no longer owns any to ship. (4) It was claimed that plaintiff had never really owned the products, that he had only an inchoate claim upon them under arrangements by which he was not to take title or to pay for the products unless he could ship and handle them, and that he was therefore in no better position to claim rights in regard to them than is the person who processed them.

■ In arguing the case to us, both plaintiff and defendants, we think, have taken much broader ground than they can stand on. Plaintiff seems to think that it is competent for him to complain generally of the acts of the Commission, and of regulations and statutes under which the Commission purports to act, instead of being confined to attacking the regulations in the particulars in which they touch him. His attack, in short, searches the

whole field to which the law and regulations apply, and points out the possibilities, under the statutes and the rules, of oppression and arbitrary action causing injury to persons and to the industry. He brings the statutes and regulations in review from the standpoint of a general critical analysis instead of, as he is required to do to obtain relief, showing that where they pinch him they violate constitutional principles. This he may not do. Dahnke-Walker Milling Co. v. Bondurant, 257 U. S. 282, 42 S. Ct. 106, 66 L. Ed. 239; Commonwealth v. Mellon, 262 U. S. 447, 43 S. Ct. 597, 67 L. Ed. 1078; Yazoo & M. V. R. Co. v. Jackson, 226 U. S. 217, 33 S. Ct. 40, 57 L. Ed. 193; Murphy v. California, 225 U. S. 623, 32 S. Ct. 697, 56 L. Ed. 1229, 41 L. R. A. (N. S.) 153.

He calls attention to and complains of the great burdens which, under the general language of the statutes and regulations, defendants may impose upon those innocent of fault. He points out how wide the net is spread to catch the feet of every bird, the innocent and the guilty. He dwells but little on the operation of the statutes and regulations as applied to his own case. Plaintiff makes too another general contention equally untenable; that is, that in order to obtain an injunction from a federal equity court, it need be made only to appear that some unconstitutional action is being, or is about to be, taken. The converse of this is true. Federal equity courts will not issue an injunction, especially to interfere with state officers, unless not only the unconstitutionality of the act complained of is clear, but the equities of the bill are equally so. In the absence of a clear showing demanding equitable relief, it will remit the complainant to the law and to the remedial processes of state agencies and state courts. Albee Godfrey Whale Creek Co. v. Perkins (D. C.) 6 F. Supp. 409, 411; Northport Power & Light Co. v. Hartley, 283 U. S. 568, 51 S. Ct. 581, 75 L. Ed. 1275; Commonwealth of Pa. v. Williams, 55 S. Ct. 380, 96 A. L. R. 166, Feb. 4, 1935; Harrisonville v. W. S. Dickey Clay Mfg. Co., 289 U. S. 334, 53 S. Ct. 602, 77 L. Ed. 1208; Fenner v. Boykin, 271 U. S. 240, 46 S. Ct. 492, 70 L. Ed. 927; Yarnell v. Hillsborough Packing Co. (C. C. A.) 70 F.(2d) 435; Boise Artesian Hot & Cold Water Co. v. Boise, 213 U. S. 276, 29 S. Ct. 426, 53 L. Ed. 796; U. S. v. Dern, 289 U. S. 352, 53 S. Ct. 614, 77 L. Ed. 1250; Pape v. St. Lucie Inlet District (C. C. A.) 75 F.(2d) 865.

Defendants too, in argument, made wide claims, some wider than they make in their briefs. They seemed there to take the position that the Legislature had the right to, and that it has authorized the Commission to, take complete charge of the oil business, including the institution of an absolute embargo on all shipments of oil, and the placing around commerce in oil of a complete barrier through which no oil can move interstate or intrastate, except at the Commission's discretion. We may shortly dispose of whether the Legislature could authorize such a complete embargo or could entirely prohibit shipments of oil in commerce, with the statement not only that the contrary is settled law, but that the Legislature has here attempted to do no such thing. It is only attempting, and the statutes must be construed as enacted to that end, to make effective its prohibitions against producing oil illegally, by authorizing the making of regulations having due relation to striking down and making ineffective all production of oil in violation of its valid laws and the valid regulations of the Commission. The regulations of the Commission must be construed as being intended to, and valid only as they are confined to, carrying out, and as they have a just and reasonable relation to, these powers. People's Petroleum Producers v. Sterling (D. C.) 60 F.(2d) 1041.

It may not be contended, as some of defendants' arguments seem broadly to claim, that the Legislature has given the Commission authority over movements in oil so complete as that they may burden and obstruct commerce in it to the point of stopping it altogether, in order to prevent the movement of some oil produced in violation of its orders. Under our form of government, there is a reductio ad absurdum in power. Here, as elsewhere in the law, reason and reason alone is the touchstone and the guide. People's Petroleum Producers v. Sterling (D. C.) 60 F.(2d) 1041. The power within reason in the Legislature to abate the nuisance of illegal production may be assumed. The power to take all reasonable action, having a reasonable relation to the exercise of this power to abate, including authorizing the Commission to

make reasonable regulations to that end, may be assumed. It may not be assumed that, in order to prevent the illegal production of some oil, the Legislature may make or authorize regulations so arbitrary and so wide of the mark aimed at as to completely socialize the oil business, or as to authorize and permit the placing of a complete embargo on its movement in commerce, interstate and intrastate, destroying the innocent with the guilty. Tyson & Bro. United Theatre Ticket Offices v. Banton, 273 U. S. 418, 47 S. Ct. 426, 71 L. Ed. 718, 58 A. L. R. 1236; Atlas Pipe Line Co. v. Sterling (D. C.) 4 F. Supp. 441. Such drastic general stoppage of traffic would violate the Constitutions of both Texas and the United States. Such laws could not be constitutionally passed or enforced any more than could laws which would undertake to subject every citizen in a community to stoppage for unreasonable searches and seizures, in order to detect some stolen or contraband property, or to enforce some sumptuary law. The principle Tyson & Bro. United Theatre Ticket Offices v. Banton lays down that laws cannot be within due process, drawn so widely as to destroy the innocent in order to catch the guilty, is a sound one. It applies here.

■ Taking this case up in the light of these general principles, we find it to be one in which no unreasonable action has been authorized or has occurred, but only action having immediate and precise relation to the powers granted and sought to be exercised. We find too, that instead of its being a case in which plaintiff appears as a victim of harsh, oppressive, and unreasonable action, and in a guise, which recommends his cause to the favorable consideration of a chancellor, all that is happening to him is that he is being prevented from shipping oil to which, as the record stands before us, he has but a doubtful title, and as to which his right to relief having interlocutorily been decided in his favor, has finally been adjudged against him in the state court. His case, in short, is one in which he has sued in a state court, and has had judgment go against him

there, which has become final by his not appealing from it. Further, it is a suit in which whether plaintiff was ever the real owner of the oil, or has any now left to ship, is greatly involved in doubt. Finally, it is a suit in which, instead of plaintiff being an innocent operator in the product of legally produced oil, it must be taken, from plaintiff's failure to allege that he has complied or offered to comply with the regulations, that plaintiff confesses that the oil he is seeking the equitable injunction of this court to enable him to ship is the product of illegally produced oil.

We do not think, within the authorities above cited, that such a case entitles plaintiff to an injunction against state statutes and state orders. We think this is a case in which a federal equity court must say that plaintiff does not make out a case for federal equity interference. We think he comes into this court so burdened as that we should not interfere to enjoin state action, where that action is threatened, or is to be taken, upon the sole ground that plaintiff is not entitled to ship products processed from illegally produced oil. Plaintiff does not show nor attempt to show that he is an innocent purchaser, that is, that he made any effort before buying the products, to find out their character.

■ We take judicial knowledge of, and that plaintiff is charged with knowledge of, the conditions in the East Texas oil fields as to surreptitious and illegal production of oil there. One who seeks the aid of a federal equity court to protect him in the handling of illegally produced oil and its products must at least show that in the true sense of the word he is an innocent purchaser thereof. R. R. Commission v. Goodson (Tex. Civ. App.) 81 S.W.(2d) 279. R. R. Commission v. Archer (Tex. Civ. App.) 80 S.W.(2d) 506. R. R. Commission v. Primrose Petroleum Company (Tex. Civ. App.) 80 S.W.(2d) 509. We think plaintiff wholly fails to present a case for federal equity action.

The injunction prayed for against state officers will be denied.