PRESIDENT OF UNITED STATES v. AR-
TEX REFINERIES SALES COR-
PORATION et al.

No. 668.

District Court, S. D. Texas, Houston Division.
June 7, 1935.

Douglas W. McGregor, U. S. Atty., and
Forrest Lee Andrews, Asst. U. S. Atty.,
both of Houston, Tex., and Richard H.
Hill, Sp. Asst. to Atty. Gen., for plaintiff.

Brantly Harris and George W. Coltzer,
both of Galveston, Tex., and Raymond
Wischeart and Edward S. Boyles, both of
Houston, Tex., for defendants.

KENNERLY, District Judge.

This is a bill in equity, filed March 7,
1935, by the President of the United States
under the Act of Congress of February 22,
1935, generally known (and referred to
herein for brevity) as the Connally Act
(sections 715 to 715l, title 15 USCA), pass-
ed subsequent to the decision of the Su-
preme Court in the Ryan and Panama Cas-
es (Panama Refining Co. et al. v. Ryan and
Amazon Petroleum Corporation v. Ryan,
293 U. S. 388, 55 S. Ct. 241, 79 L. Ed. 446),
against the Artex Refineries Sales Corpo-
ration, the Gulf Oil Marketing Corpora-
tion, Deepwater Oil Terminals, Inc., and
Seaboard Tankers Company, Inc., corpo-
rations with domiciles in this district and
division, and the International-Great
Northern Railroad Company and its trus-
tees in bankruptcy, and the Houston Belt
& Terminal Railway Company, for re-
straining order, preliminary injunction, and
perpetual injunction (section 381, title 28,
USCA (sudivision (b) of section 10
of the Connally Act, 15 USCA § 715i, subd.
(b) restraining defendants from shipping
or transporting "contraband oil," as de-

fined in such act, in interstate commerce. Restraining order was granted against all defendants, but preliminary injunction only against the four defendants first named. Originally, the United States was a party plaintiff, but was dismissed out, as were the railroad defendants, by the filing of plaintiff's amended bill, March 28, 1935. By supplemental bill filed May 10, 1935, the Pompano Oil Terminals, a corporation of this district and division, was made a defendant (and has entered its appearance herein), upon the allegation that it had, since the filing of this suit, acquired the properties of the defendant Deepwater Oil Terminals, Inc.

Defendants Artex Refineries Sales Corporation, The Gulf Oil Marketing Corporation, Deepwater Oil Terminals, Inc., and Seaboard Tankers Company, Inc., have (Equity Rule 29, 28 USCA following section 723) filed separate but identical motions to dismiss, and this is a hearing, on briefs, of such motions.

The facts as set forth in plaintiff's amended bill (taken as true on motion to dismiss) are substantially as follows:

(a) The suit is by the President, who purports to move herein against defendants under the Connally Act and Executive Order No. 6979, dated February 28, 1935, designating and appointing the Secretary of the Interior as agent of the President to execute all the powers and functions of such act (except those vested in the President under section 4 of the act), and under reports of his attorneys and agents of violations of such act by defendants, and upon the request of the Secretary of the Interior to the Attorney General, to institute or have instituted, and to prosecute, this suit.

(b) The domiciles of defendants are within the territorial jurisdiction of this court.

(c) The Laws of Texas (Title 102 of Texas Revised Civil Statutes 1925 and Amendments [Vernon's Ann. Civ. St. Tex. art. 6004 et seq.]), enacted for the conservation of oil and gas and to prevent waste, regulate the manner in which wells for the production of petroleum oil shall be drilled and operated in Texas, and gives power to, and makes it the duty of, the Railroad Commission of Texas to enforce such Conservation Laws, and to inquire into the production, storage, transportation, processing, and marketing of petroleum oil, and its products, in order to determine if waste exists or is imminent, and to make orders, rules, and regulations to prevent waste, and to enforce such Laws.

(d) Acting under such Laws, the Railroad Commission has restricted the production of oil from all oil wells in Texas, including the wells in the East Texas oil fields, to a daily allowable production based on the well's potential production, and has fixed the quota and amount of production from all oil fields in Texas.

(e) Such commission has promulgated and issued rules and regulations to enforce such allowable production and quotas, among such rules and regulations being that in the East Texas oil fields, no crude petroleum oil shall be transported to a refinery without first being placed in field storage, and no crude petroleum oil shall be taken or withdrawn from field storage without a certificate from an agent of such commission, certifying that such petroleum has been produced in conformity with, and not in violation of, the Conservation Laws of Texas, and the rules and regulations promulgated thereunder. Such certificate is referred to as a "tender."

(f) On or about February 24, 1935, February 25, 1935, February 26, 1935, and February 27, 1935, the defendant Artex Refineries Sales Corporation tendered for shipment at Kilgore, Tex., in or near the East Texas field, and caused to be shipped and transported from Kilgore, Tex., to Houston, Tex., by the International-Great Northern Railroad Company, in tank cars, a quantity of crude petroleum, to wit, approximately 93,208 barrels, consigned to the defendant Gulf Oil Marketing Corporation, in care of the defendant Deepwater Oil Terminals, Inc., and being the oil involved in this suit.

(g) Such 93,208 barrels of crude petroleum was shipped and transported, in tank cars, on waybills marked "for export or coastwise" movement.

(h) Such crude petroleum is now in the possession of the defendants herein.

(i) Such crude petroleum was tendered for shipment and caused to be transported by the defendant Artex Refineries Sales Corporation, and was transported, as petroleum residuum, a by-product of crude petroleum.

(j) As authority for the shipment of such crude petroleum, the defendant Artex Refineries Sales Corporation delivered to the International-Great Northern Railroad Company, a purported permit or tender to

transport a quantity of petroleum residuum on a certain oil products permit No. 590–A on Form SW–4, of the Railroad Commission of Texas, and by so doing, and by representing said shipment as petroleum residuum, obtained acceptance for transportation, and transportation, of said quantity of crude petroleum by the said International-Great Northern Railroad Company.

(k) Defendant Artex Refineries Sales Corporation did not have, and has not at this time, a permit (tender) for the transportation of such crude petroleum. And such crude petroleum, so shipped and transported, was petroleum which was transported, and withdrawn from storage in excess of the amounts permitted to be transported or withdrawn from storage under the laws of the state of Texas and under such regulations and orders prescribed thereunder by the Railroad Commission of the state of Texas.

(l) The defendants Artex Refineries Sales Corporation, Deepwater Oil Terminals, Inc., the Gulf Oil Marketing Corporation, and the Seaboard Tankers Company, Inc., are engaged in the business of shipping and transporting in interstate commerce crude petroleum and by-products thereof, and at the time they were enjoined, as herein stated, were shipping and transporting, and intended to ship and transport, such crude petroleum in interstate commerce.

■■■ 1. Defendants say that since plaintiff's bill sets forth that such crude petroleum was tendered for shipment, and caused to be transported, and was transported, as petroleum residuum, and under representations that it was petroleum residuum, and under a purported permit to transport petroleum residuum, that plaintiff is collaterally attacking such permit, which defendants say he may not do. In other words, defendants say that the state having issued a permit or tender for petroleum residuum, crude petroleum may be lawfully removed from storage and transported thereunder, and plaintiff may not, in this manner, complain thereof.

Plaintiff's bill in effect charges fraud, in that it is claimed that crude petroleum was shipped under representations that it was petroleum residuum, and under a purported permit for petroleum residuum, and that there was no permit for crude petroleum. While plaintiff might well have directly alleged (if it be a fact) that it is unlawful to ship crude petroleum under

a permit for petroleum residuum, he in effect does so in this language quoted from the amended bill: "And said crude petroleum, so shipped and transported, was petroleum which was transported, and withdrawn from storage in excess of the amounts permitted to be transported or withdrawn from storage under the laws of the State of Texas and under the regulations and orders prescribed thereunder by the Railroad Commission of the State of Texas."

I think the allegations complained of sufficient under defendants' motion to dismiss.

■■■ 2. The question is also presented of whether plaintiff's bill shows the 93,208 barrels of oil involved to be "contraband oil" within the meaning of such act, which defines "contraband oil" as follows: "The term 'contraband oil' means petroleum which, or any constituent part of which, was produced, transported, or withdrawn from storage in excess of the amounts permitted to be produced, transported, or withdrawn from storage under the laws of a State or under any regulation or order prescribed thereunder by any board, commission, officer, or other duly authorized agency of such State, or any of the products of such petroleum." (15 USCA § 715a).

Also, whether plaintiff's bill states a cause of action under such act.

Plaintiff pleads the Conservation Laws of Texas (Vernon's Ann. Civ. St. Tex., art. 6004 et seq.) and the regulations adopted thereunder by the Railroad Commission of Texas, and alleges, in substantially the wording of the act, that the oil involved was withdrawn from storage and transported in violation of such Laws and regulations. The Conservation Laws of Texas have, applied to varying facts, many times been upheld by the courts. McMillan v. Railroad Commission (D. C.) 51 F.(2d) 400; F. C. Henderson, Inc., v. Railroad Commission (D. C.) 56 F.(2d) 218, 219; People's Petroleum Producers v. Sterling (D. C.) 60 F.(2d) 1041, 1042; Danciger Oil & Refining Co. v. Smith (D. C.) 4 F. Supp. 236, 237; Amazon Petroleum Corporation v. Railroad Commission (D. C.) 5 F. Supp. 633, 634; Melton v. Railroad Commission (D. C.) 10 F. Supp. 984. Likewise, the Conservation Laws of other states. Champlin Refining Co. v. Corporation Commission of Oklahoma, 286 U. S. 210, 52 S. Ct. 559, 76 L. Ed. 1062, 86 A. L. R. 403; Lindsley v. Natural Carbonic Gas

Co., 220 U. S. 61, 31 S. Ct. 337, 55 L. Ed. 369, Ann. Cas. 1912C, 160; Ohio Oil Co. v. Indiana, 177 U. S. 190, 20 S. Ct. 576, 44 L. Ed. 729; Walls v. Midland Carbon Co., 254 U. S. 300, 41 S. Ct. 118, 65 L. Ed. 276; Pennsylvania v. West Virginia, 262 U. S. 553, 43 S. Ct. 658, 67 L. Ed. 1117, 32 A. L. R. 300. That reasonable regulations promulgated by a commission or board, thereunto duly authorized, seeking to enforce and to make effective such Laws, are valid is also clear. People's Petroleum Producers v. Sterling, supra; Amazon Petroleum Corporation v. Railroad Commission, supra; Melton v. Railroad Commission (D. C.) 10 F. Supp. 984; Hercules v. Thompson (D. C.) 10 F. Supp. 988; Lacy v. Railroad Commission (D. C.) 10 F. Supp. 990.

Adding to this the allegation in plaintiff's bill that such oil is about to be shipped or transported in Interstate Commerce presents, on the face of the bill, a cause of action under the Connally Act, if, as plaintiff avers, that act be valid. It may be that upon final hearing, when the evidence is in, it will appear that such Conservation Laws, and the regulations thereunder, as applied to defendants, their action and/or their situation, deprive them of rights guaranteed to them under the Federal Constitution, or that such laws and regulations have not been violated by them, etc.; but that matter is not now before the court.

■ 3. Defendants, by their motion to dismiss, attack the constitutional validity of the Connally Act. I think that question must be regarded as settled in this (Fifth) circuit against defendants' contention by the ruling of the Circuit Court of Appeals, in passing upon the validity of section 9 of the National Industrial Recovery Act (section 709, title 15, USCA), in the Ryan and Panama Cases [Ryan v. Amazon Petroleum Corporation, 71 F.(2d) 1, 2; Ryan v. Panama Refining Co., 71 F.(2d) 8], which ruling this court deems it proper to follow. See, also, Locke v. United States, 75 F.(2d) 157, 159, where the Circuit Court of Appeals uses this language: "An act of Congress which assumes to regulate interstate commerce even by indirection is presumptively constitutional. That the Congress may legislate as respects interstate commerce so as to supplement and aid state functions was held by us in Ryan et al. v. Amazon Petroleum Corporation, 71 F.(2d) 1, and this holding was not affected by the reversal of the case on another point by the Supreme Court. Panama Refining Co.

v. Ryan, 293 U. S. 388, 55 S. Ct. 241, 79 L. Ed. 446."

It should be said, however, that the writer believes the applicable rule is that found in Hammer v. Dagenhart, 247 U. S. 251, 38 S. Ct. 529, 62 L. Ed. 1101, 3 A. L. R. 649, Ann. Cas. 1918E, 724, and that if the question was an open one, and not settled as above indicated, he would, for the reasons there stated, and others, hold the Connally Act constitutionally invalid. See discussion by Chief Justice Taft in Brooks v. United States, 267 U. S. 432, 438, 45 S. Ct. 345, 69 L. Ed. 699, 37 A. L. R. 1407, of the distinction between the Hammer v. Dagenhart Case, upon which defendants stand, and the lottery, automobile, white slave, and liquor, etc., cases, upon which plaintiff stands.

■ 4. Defendants attack section 4 of the act (15 USCA § 715c) reading as follows: "Whenever the President finds that the amount of petroleum and petroleum products moving in interstate commerce is so limited as to be the cause, in whole or in part, of a lack of parity between supply (including imports and reasonable withdrawals from storage) and consumptive demand (including exports and reasonable additions to storage) resulting in an undue burden on or restriction of interstate commerce in petroleum and petroleum products, he shall by proclamation declare such finding, and thereupon the provisions of section 3 [section 715b] shall be inoperative until such time as the President shall find and by proclamation declare that the conditions which gave rise to the suspension of the operation of the provisions of such section no longer exist. If any provision of this section or the application thereof shall be held to be invalid, the validity or application of section 3 [section 715b] shall not be affected thereby."

They say this is an unconstitutional delegation of authority to the President and void under the decisions of the Supreme Court in Panama Refining Co. v. Ryan, supra, and A. L. A. Schechter Poultry Corporation v. United States, 55 S. Ct. 837, 79 L. Ed. 1570, N. R. A. decision.

There is no occasion to decide the point now. It is not raised by plaintiff's bill and defendants' motion to dismiss. There is no allegation that the President has found it necessary to exercise the powers which section 4 purports to give him. Section 4 is not shown to in any way affect the case presented in plaintiff's bill.

It is not necessary to discuss other questions presented. From what has been said, it follows that defendants' motion to dismiss should be denied.