FAVORITE MFG. CO. v. PORTLAND MFG. CO.

(Circuit Court of Appeals, Sixth Circuit.  November 4, 1913.)

No. 2,354.

TRADE-MARKS AND TRADE-NAMES (§ 92*) — SUIT FOR UNFAIR COMPETITION — SUFFICIENCY OF BILL.

Complainant, which made a water motor for domestic use, manufactured motors for defendant and marked them with defendant's name as manufacturer.  On making a contract by which defendant agreed to take 500 motors per month for 5 years, complainant withdrew from the business of selling.  *Held*, that a bill alleging only such facts and that defendant had ceased buying under the contract but was selling a motor of identical appearance of its own manufacture did not state a cause of action for unfair competition.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. §§ 102, 103; Dec. Dig. § 92.*

Unfair competition in use of trade-mark or trade-name, see notes to Scheuer v. Muller, 20 C. C. A. 165; Lare v. Harper & Bros., 30 C. C. A. 376.]

Appeal from the District Court of the United States for the Southern Division of the Western District of Michigan; Clarence W. Sessions, Judge.

Suit in Equity by the Favorite Manufacturing Company against the Portland Manufacturing Company.  Decree for defendant, and complainant appeals.  Affirmed.

C. C. Shepherd, of Columbus, Ohio, for appellant.
Chappell & Earl, of Kalamazoo, Mich., for appellee.

Before WARRINGTON, KNAPPEN, and DENISON, Circuit Judges.

DENISON, Circuit Judge.  The Favorite Company, by its bill of complaint, undertook to state a case of unfair competition against the Portland Company, and prayed an injunction accordingly.  The District Court sustained the demurrer of the defendant and dismissed the bill.  This appeal presents the question whether the allegations of the bill make a case.

From the argument in this court, and from an inspection of the mechanical structures which were filed as exhibits to the bill, it seems that complainant's grievance, if it had any of the nature of unfair competition, was that defendant had imitated its structure in wholly nonfunctional features.  The device was a water motor suitable for operating washing machines or other small household apparatus. Comparison of the two devices gives color to the claim of such imitation to an extent not normally resulting from the rightful selection of a size, shape, color, and detailed configuration appropriate to the device; and it may be that, based upon these resemblances, a pleading could be framed which would call for decision of the question presented, by Rushmore v. Badger Co., 198 Fed. 379, 117 C. C. A. 255. Whether, in a proper case, this court would give relief to the "utmost

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes.

limit" adopted in the Second Circuit, we have never decided.    Coca Cola Co. v. Gay-Ola Co., 200 Fed. 720, 724.

We think the present case not an appropriate one for deciding the broad question whether the imitation of such characteristics, unaccompanied by any more express fraud, can make out a case.   We say this not only because the bill of complaint fails to allege clearly or carefully the facts which, in any event, would be necessary to establish such a case, but also because it discloses a peculiar situation which negatives the existence of that special equity at the basis of all cases of this class, viz., that the goods offered to the public by defendant are, by their dress or the manner of their offer, so presented that the public will buy them supposing that they are the complainant's output, thus taking away that trade which normally belongs to complainant because of the public belief that the complainant is the manufacturer of these articles.   The bill says that the complainant had an established trade and reputation in these water motors; that defendant became interested and bought a few for trial purposes; that these were so satisfactory that October 21, 1909, the Favorite Company agreed to make and sell these motors to the Portland Company, substituting thereon the name of the Portland Company in the place of the Favorite Company as the apparent manufacturer, and leaving them without anything to indicate that they were the output of the Favorite Company; that this contract was in force about a year, and that a large number of motors were put on the market by the Portland Company thereunder; that in September, 1910, a new contract was made by which the Portland Company agreed to buy from the Favorite Company 500 motors each month; and (as we understand the allegation) that the Favorite Company withdrew from the business of selling these motors separately and turned over all its existing trade of that kind to the Portland Company.   The exhibits show that not only were these motors, as manufactured by the Favorite Company marked with the name of the Portland Company as if of the manufacturer, but also that they bore prominently the name "Portland" as the name or brand of the article.   This contract was for five years.

The bill was filed in September, 1911, and alleges that the Portland Company has "ceased to buy the stipulated number of Favorite motors each month, as provided for in the said contract," but is putting out motors of its own manufacture of identical appearance, whereby the retail dealer is enabled to deceive the ultimate purchaser, etc.   It does not allege that the Portland Company wrongfully violated the contract, nor that the Favorite Company had performed on its part; but we may overlook such omission.   In any event, it appears that for more than one and perhaps for two years the Favorite Company had joined in putting out these goods as the goods of the Portland Company, and indeed, for all the period after September, 1910, had itself withdrawn from this part of its business and turned it over to the Portland Company.   So far as the bill indicates, all the existing trade and customers for this article were justified in supposing that it was the product of the Portland Company, and this belief had been created by not only the acquiescence but the act of the Favorite Company.   Under such

circumstances, it is not apparent how there could be any public deception of which the Favorite Company could complain. For this reason, if for no other, the bill fails to state a good case.

It may be that the facts justify additional allegations (1) to emphasize the nonfunctional character. of the particulars of imitation, as by showing that shape and size were not specially appropriate to the desired uses, or that the internal changes to escape infringement of patent would normally have caused external changes, and (2) to neutralize that effect of the contract which we have pointed out, as by showing that the appearance of the goods continued to indicate to the public that they were the "Favorite" output, in spite of the apparently contrary inference necessary from the bill in its present form, and read in connection with the exhibits. So, perhaps, the contract situation could be so much more fully stated as to show rights arising thereunder requiring protection by injunction. In one or more of these respects amendments would doubtless have been permitted, if requested, but the record does not indicate that any such opportunity was asked or desired, and complainant did not, in this court, indicate such desire. In this situation, we will not direct a modification of the decree to give permission for amendment, but only that it shall be made expressly (as it probably is in its present shape) without prejudice to the filing of a new bill by complainant upon either of the theories foreshadowed by the present bill. We do not see that laches could be predicated upon the intervening delay.

As so modified, the decree will be affirmed, and the appellee will recover the costs of this court.