### SEARS, ROEBUCK & CO. v. ELLIOTT VARNISH CO.

(Circuit Court of Appeals, Seventh Circuit. Jan. 4, 1916.)

No. 2286.

1. TRADE-MARKS AND TRADE-NAMES ☞59(5)—INFRINGEMENT—IMITATION OF NAMES.

The name "Roof Leak," used as a trade-mark for a roof paint, is not infringed by the name "Never Leak," used for a similar paint.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 71; Dec. Dig. ☞59(5).]

2. TRADE-MARKS AND TRADE-NAMES ☞75—UNFAIR COMPETITION—USE OF NAME.

Complainant made a roof paint, which it sold under the name "Roof Leak." It contracted to furnish such paint to defendant, a mail order house, for sale, but to prevent its other customers from knowing that it was the same paint. By agreement the labels bore the name "Never Leak" and a different name as the manufacturer. On expiration of the contract, defendant bought paint elsewhere, but continued to use thereon the name "Never Leak." Held, that such use did not constitute unfair competition, since it had no tendency to deceive the public into believing that the paint sold thereunder was that of complainant.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 86; Dec. Dig. ☞75.]

Appeal from the District Court of the United States for the Eastern Division of the Northern District of Illinois; Arthur L. Sanborn, Judge.

Suit in equity by the Elliott Varnish Company against Sears, Roebuck & Co. Decree for complainant, and defendant appeals. Reversed.

For opinion below, see 221 Fed. 797.

Luther L. Miller and C. C. Linthicum, both of Chicago, Ill., for appellant.

Walter H. Chamberlin and H. S. Wegg, both of Chicago, Ill., for appellee.

Before KOHLSAAT and ALSCHULER, Circuit Judges, and ANDERSON, District Judge.

ANDERSON, District Judge. For several years prior to 1909 appellee was engaged in the manufacture of paints. As early as 1902 or 1903 it manufactured and sold a roof paint which was adapted to stop leaks in roofs. About that time the name "Roof Leak" was used on labels on the paint and it was extensively advertised by that name.

In 1905 appellee registered the words "Roof Leak" as its trade-mark and continued to sell to the trade its roof paint under that name.

The appellant is a mail order house. It sells goods by catalogue and delivers them by mail, express, or freight. It must sell at a lower price than the retail dealer in the trade, because its customers pay, in addition to the purchase price, the carriage charges.

The appellee desired to have the appellant sell its roof paint, but would not allow appellant to sell it under the name "Roof Leak," because its other customers would know that it was selling its paint to appellant for a less price than it was giving them; so in order to get the benefit of sales through appellant, and at the same time conceal the fact from its other customers, it was agreed that the appellant should sell appellee's paint under the name "Never Leak." It is averred in the bill:

"That on or about the month of March, 1909, your orator made a verbal contract with the defendant * * * to furnish to the defendant its 'Roof Leak' paint under the brand 'Never Leak,' a brand selected by your orator in simulation of your orator's brand 'Roof Leak,' but sufficiently different therefrom to indicate the goods of your orator that were sold through the defendant."

The evidence shows that, under the arrangement made between the parties, appellant sold appellee's goods under the name "Never Leak." In its catalogues it described the paint as "Never Leak Roof Cement Paint." The labels used by appellant are set out in the record. One of them bore the name of the Illinois Paint Company; the other bore appellant's name. The reason for this course of procedure appears in the evidence of James P. Elliott, the president and manager of the appellee. He testified:

"Complainant's purpose in refusing to permit Sears, Roebuck & Co. to handle 'Roof Leak' paint under complainant's mark was due to a desire to prevent complainant's customers from knowing that Sears, Roebuck & Co. were handling the same thing."

Pursuant to this arrangement, the appellant sold appellee's goods for about a year, when the appellant ceased to purchase paint from appellee, purchased it elsewhere, and continued to sell it under the name "Never Leak," and with the same advertisements and catalogue insertions that it used in selling appellee's paint. Appellee brought this suit to restrain the appellant from so doing upon two grounds: First. Infringement of appellee's trade-mark. Second. Unfair competition, by continuing, after it ceased to buy appellee's goods, to use and apply to goods not appellee's the words "Never Leak" and labels that simulated appellee's labels, thereby deceiving the public. The District Court found in favor of appellee on both these propositions, and from the decree of court entered accordingly, the appeal herein is prosecuted.

There is some contradiction in the testimony as to who suggested the name "Never Leak," but this is not important. Is "Roof Leak" a valid trade-mark? As applied to a paint, it of course means a paint which will stop leaks in a roof.

"It is the settled rule that no one can appropriate as a trade-mark a generic name, or one descriptive of an article of trade, its qualities, ingredients, or characteristics, or any sign, word, or symbol which, from the nature of

the fact it is used to signify, others may employ with equal truth." Trinidad Asphalt Manufacturing Company v. Standard Paint Company, 163 Fed. 977, 90 C. C. A. 195, affirmed by the Supreme Court in Standard Paint Company v. Trinidad Asphalt Manufacturing Company, 220 U. S. 446, 31 Sup. Ct. 456, 55 L. Ed. 536.

Under the authorities, it would appear that this name is descriptive of the paint. It signifies its qualities and characteristics, and from the nature of the fact it is used to signify, namely, paint that will stop leaks in a roof, others may employ it with equal truth. The term may be truthfully applied to any paint calculated to stop leaks in a roof.

[1] But, passing the question as to the validity of the trade-mark, it is quite obvious, under the decision of this court in the case of S. R. Feil Company v. John E. Robbins Company, 220 Fed. 650, 136 C. C. A. 258 (the Sal Vet-Sal Tone case) that the words "Never Leak" are not an infringement of "Roof Leak." The court there said:

"In the present case defendant has appropriated only the term 'Sal,' which he and every one else was at liberty to use. As between the arbitrary term 'Vet' and the word 'Tone,' there can be no reasonable claim to resemblance."

So here the appellant has appropriated only the term "Leak," which it and every one else was at liberty to use and no one can claim that there is a resemblance between the words "Roof" and "Never."

[2] Nor is the appellee in any better position as to the charge of unfair competition. The essence of unfair competition consists in the sale of the goods of one manufacturer or vendor for those of another. The mere resemblance of the words used by the appellant to the trademark of the appellee is not sufficient to establish unfair competition, because this would be to give, as stated by the Supreme Court in the Standard Paint Company v. Trinidad Asphalt Company, supra, "the full effect of a trade-mark while denying its validity as such."

The appellee's case, then, stands upon the proposition that the appellant is selling its own goods as the goods of appellee. From the facts above stated it is apparent that, while the appellant was selling appellee's paint, it sold it, not as the paint of the appellee, not as "Roof Leak," manufactured by the Elliott Varnish Company, but as "Never Leak," manufactured by the Illinois Paint Works; and the evidence shows that it was thus sold by appellant under an arrangement with the appellee in order to conceal from the other customers of appellee the fact that such paint was the paint of the appellee. If the paint was to be sold and was sold by the appellant under a name that would conceal from the other customers of the appellee the fact that the paint was the paint of the appellee, it is difficult to see how the sale of other paint under this name would deceive the public into believing that it was buying the paint of the appellee.

Appellee now complains of a method of doing business by which appellee says appellant is selling its own goods as the goods of appellee, and yet this method is just such as was agreed upon between appellee and appellant to conceal from appellee's other customers the fact that the appellant was selling appellee's goods. A method of doing business agreed upon for the purpose of making the trade believe that appellant was not selling the goods of appellee (and which, so far as

this feature is concerned, seems to have been successful) can hardly be relied upon to establish that appellant is deceiving the public into believing that it is selling appellee's goods. Appellee's case lacks the very essence of unfair competition.

It is contended by the appellee that the appellant got the right to use the words "Never Leak" from the appellee and that this right to use was only to continue while the appellant sold the paint of the appellee. The evidence does not support this contention.

Much insistence is placed upon the resemblance of the labels and particularly of the language of the directions for the use of the paint. The labels are not so similar as to deceive the ordinary purchaser, and the directions for using the paint are necessarily similar. Appellant has the right to sell paint with the same ingredients as that of appellee; it is used for the same purpose; and no reason is perceived why it may not employ the same language in directions for its use.

The decree is reversed, and the cause remanded, with directions to dismiss the bill.