**DARWIN & MILNER, Inc., v. KINITE CORPORATION et al.**

**No. 5007.**

Circuit Court of Appeals, Seventh Circuit.

June 26, 1934.

Rehearing Denied Oct. 1, 1934.

v·  .v hw·

Donald H. Sweet, of Chicago, Ill., Hadley F. Freeman, of Cleveland, Ohio, and George M. Albrecht, of Milwaukee, Wis., for appellant.

Henry M. Huxley, of Chicago, Ill., and Arthur W. Fairchild and Leon F. Foley, both of Milwaukee, Wis., for appellees.

Before ALSCHULER, EVANS, and FITZHENRY, Circuit Judges.

FITZHENRY, Circuit Judge.

This appeal involves a decree entered in a suit wherein a bill in equity alleged the infringement of United States Patent, No. 1,-277,431, issued September 3, 1918, to Paul Richard Kuehnrich, and by him assigned to appellant. In addition to seeking an injunction and an accounting for the infringement, it asks an injunction from using the designation "Kinite" or "Kompite" as a trade-mark; also damages for alleged unfair competition against appellees Dorr and Fleming, the president and secretary, respectively, of the appellee Kinite Corporation, and for an award of treble damages on account of the wanton and willful disregard of appellant's rights. Appellees filed an answer in which they alleged nonpatentability, noninfringement, and denied the unfair competition with which they are charged, claiming to be the owner of the trade-mark "Kinite" and "Kompite." The cause was heard by the District Court, which found the patent to be invalid, that there had been no infringement, no unfair competition, and that appellees Dorr and Fleming were not liable personally. The court dismissed the bill for want of equity and appellant took this appeal.

The patent in suit sets forth an alloy steel for use as a substitute for tungsten high-speed steel. The patent states that the steel has red-hardness,. is high-speed, and may be cast, machined, or forged. The patent claims a steel containing approximately: Carbon 1.2 per cent. to 3.5 per cent.; chromium 8 per cent. to 20 per cent.; cobalt 1 per cent. to 6 per cent. Appellant asserts that prior to the production of the steel covered by this patent, a cast high-speed tool was unknown. Attempts to cast tungsten high-speed steel had failed. Appellee contends, on the contrary, that the steel covered by the patent, which was sold by appellant under the name Cobaltcrom PRK 33, and was also known to the trade by such contractions as Cobaltcrom, PRK 33, and PRK, merely represented a difference of proportion of known ingredients, producing no new result, and that it is, therefore unpatentable.

Alloy steels were first conceived about 1858. After that time, chemists experimented with countless combinations of alloys, in varying proportions. It was learned that a comparatively slight difference in the proportion in which these alloys were used often made considerable difference in the resultant product. For some purposes one type of steel with one certain property in a larger

degree than others was found most desirable. For other purposes, another quality of steel was preferred.

In support of their contention of non-validity, appellees cite numerous patents in the prior art, among them the Haynes Patent, No. 1,150,113. This Haynes patent describes the making of a series of alloys of cobalt, chromium, and iron, with a constant per cent. of chromium, around 20 per cent., and with iron content varying from 10 per cent. to 75 per cent. of the mixture, with cobalt correspondingly varying from 70 per cent. down to 5 per cent. The specifications of the Haynes patent recite:

"In these alloys it is desirable not to have any material amount of carbon; say, not above 1 per cent carbon; while a carbon content below 0.60 is better.

"* * * By adding carbon to these ternary alloys they may be hardened to a considerable degree without losing very much in malleability, and for certain purposes carbon may become a valuable constituent."

From a study of the Haynes Patent, No. 1,150,113 it becomes apparent that the metals are the same in both patents, the proportions only varying, and that Haynes disclosed the fact that the addition of carbon to the other alloys would produce a harder steel, which for some purposes would be more valuable.

In Bethlehem Steel Co. v. Churchward I. Steel Co. (C. C. A.) 268 F. 361, 364, the court said:

"Patentable novelty may reside either in the elements of alloys or in the proportions of the elements. * * * But novelty of proportions in the sense of the patent law involves something more than figuring out proportions differing from any that were known before. It involves new results from new proportions, developing a new metal, or, it may be, an old metal with new characteristics of structure or performance, embracing entirely new, or at least substantially enhanced, qualities of utility."

The question before us therefore narrows itself down to this: Does the record support appellant's claim that the steel of the patent in suit "was the first high-speed heavy-duty steel successful in cast form?" If it does, then upon the record before us, it must be conceded to have "new characteristics of structure or performance * * *, substantially enhancing its utility." Cf., Siekert & Baum Stationery Co. v. Stationers Loose Leaf Co. (C. C. A.) 51 F.(2d) 326.

The evidence upon this subject is contradictory. Appellees, on their part, made some ex parte tests purporting to compare appellees' Kinite, appellant's PRK 33, chrome steel, and tungsten high-speed steel. From these tests, they conclude that the tungsten steel was a high-speed steel and that none of the other three should be so classed. Granting to these tests the probative value which they deserve, we find a large amount of evidence in the record to the contrary effect. It was shown that appellant's PRK sells under the price arrangements peculiar to high-speed steels and is generally recognized in the trade as a high-speed steel; that for 99 per cent. of the uses to which high-speed steel is put, PRK is equal or superior to tungsten high-speed steel; that it competes with tungsten high-speed steel and for some uses has supplanted it; that the United States Navy has found PRK to be a high-speed red-hard steel. From these facts, from the history of the development of this steel and its rapid and widespread adoption, we conclude that it is, as contended by appellant, a different steel. The steel of this patent was the first heavy-duty steel that could be successfully cast and, as such, is distinguishable from the prior art.

Before passing upon the issue of infringement and unfair competition, it is necessary to examine somewhat more closely the history of the two corporations which are the parties to this suit. The General Milling Tool Company of Cleveland was organized in 1917 to manufacture tools and dies from PRK, which it bought from the owner of the patent. In 1918, the business was sold to the Kinite Company of Milwaukee. This company continued to obtain its raw material from appellant. It was remelted and made into castings and sold to the trade under the trade-mark "Kinite" or, when the casting was provided with a backing of ordinary steel so that a composite casting was formed, under the trade-mark "Kompite." These trade-marks were registered by the Kinite Company in the United States Patent Office. Appellant sold its product under the name "Patented Cobaltcrom PRK 33." "PRK 33" being the registered trade-mark of appellant. On January 1, 1926, appellee Kinite Corporation purchased the assets, including trade-marks and good will, of the Kinite Company. At that time, Kinite Company had on hand about 40,000 pounds of material purchased from appellant. The new corporation had some negotiations with appellant respecting the continued purchase of raw material from it, the right to manufacture the material upon

the payment of a royalty, and the right to sell PRK not only in castings, but in bars and forgings as well. The negotiations were unsuccessful. After using up the PRK which it had on hand, Kinite Corporation changed the formula of the steel which it used for its castings and continued to sell them by the trade-names of Kinite and Kompite and also sold the same material in the form of bars and forgings.

It is contended by appellant that appellees continued to manufacture substantial amounts of steel that came within the formula of the patent up to the time the bill was filed. In this respect the trial court found there was no infringement and in discussing infringement said:

"The defendant here is shown to have attempted to pursue a formula which is beyond the limits of Kuehnrich, and I believe they have been successful. In the great number of operations which were conducted at the defendant's factory, there is a closer adherence to the percentage which it sought to introduce so far as cobalt is concerned, and that ought to dominate the finding in respect to infringement.

"No matter if in certain cases there was a close approach to the minimum of one per cent in Kuehnrich, if the aim was, and that was accomplished in the greater percentage of cases, keeping as rigidly to .6 or .7 as it was possible to keep, in any event below 1.— if that is the fact, and I believe it is the fact upon the testimony here, the issue of infringement is resolved against the plaintiff in this case."

We find nothing in the record which would justify us in disturbing the holding of the trial court upon this question of fact. While there is proof that small amounts of steel were made that came within the limitations of the patent, the evidence is that this steel was not sold.

Appellant further contends, however, that steel made by the formula now used by appellees also infringes because it substitutes molybdenum for a portion of the cobalt specified in appellant's patented steel and that

molybdenum is simply a well-known equivalent for cobalt.

Appellant's contention that its patent is entitled to a broad interpretation cannot be sustained. The invention in the patent in suit followed that of numerous other persons which had preceded it and were being put to practical use. Moreover, patentee plainly stated in his specifications that cobalt from 1 per cent. to 6 per cent. was an essential element in his formula and it is so made in each of his claims. The fact that appellees have produced an approaching, similar result by adding molybdenum, of the chromium group, instead of a part of the cobalt, gives appellant no ground to claim the use of molybdenum as an equivalent. It is only entitled to the formula claimed in its patent. As was said by Mr. Justice Brown in Wright v. Yuengling, 155 U. S. 47, 15 S. Ct. 1, 3, 39 L. Ed. 64:

"The patentee, having described it in the specification, and declared it to be an essential feature of his invention, and having made it an element of these two claims, is not now at liberty to say that it is immaterial, or that a device which dispenses with it is an infringement, though it accomplish the same purpose in, perhaps, an equally effective manner."

In regard to the allegation of unfair competition, the record shows that appellant and appellee each sold its respective products under its own individual trade-marks, and we are at a loss to understand how the act of appellee in changing the formula of the product which it is selling under its own trade-mark can amount to unfair competition. Sears, Roebuck & Co. v. Elliott Varnish Co. (C. C. A.) 232 F. 588.

It follows from what has been said that there is no basis for holding appellees Dorr and Fleming individually liable.

The decree of the District Court, in so far as it holds the patent in suit invalid, is reversed, but affirmed in all other respects.

Reversed and remanded, with direction to vacate the decree as entered and to enter a decree in consonance with the foregoing views.