GLENMORE DISTILLERIES CO. v. NA-
TIONAL DISTILLERS PRODUCTS
CORPORATION.

No. 397.

District Court, E. D. Virginia.

July 1, 1938.

Mason, Fenwick & Lawrence, of Wash-
ington, D. C., and Williams, Mullen, Wil-
liams & Hazelgrove, of Richmond, Va.
(Edward G. Fenwick and Charles R. Fen-
wick, both of Washington, D. C., Guy B.
Hazelgrove and Ralph T. Catterall, both
of Richmond, Va., and J. H. Gold, of Louis-
ville, Ky., of counsel), for plaintiff.

Hunton, Williams, Anderson, Gay &
Moore, of Richmond, Va., and Breed, Ab-
bott & Morgan, of New York City (Hugh
S. Williamson, of New York City, Thomas
B. Gay, of Richmond, Va., Gerald J. Craugh
and Edward A. Craighill, Jr., both of New
York City, and Lewis F. Powell, Jr., of
Richmond, Va., of counsel), for defendant.

POLLARD, District Judge.

This is a trade-mark infringement suit
in which the plaintiff, Glenmore Distilleries
Company, the owner of the trade-mark
"Kentucky Tavern" for whiskey, is seeking
injunctive relief against the defendant, Na-
tional Distillers Products Corporation, by
reason of the use by the defendant in the
manufacture and sale of whiskey of the
trade-name "Town Tavern".

Plaintiff is a corporation of the State of
Kentucky, and the defendant is a corpora-
tion of the State of Virginia with its prin-
cipal office in the City of Richmond, in the

Eastern District of Virginia. The jurisdiction of this Court is invoked by reason of the diversity of citizenship of the parties in a cause wherein the amount in controversy exceeds the sum of $3,000, and as one arising under the trade-mark laws of the United States.

Plaintiff is engaged in the business of distilling, rectifying, blending, bottling and selling whiskey, having its principal place of business in the City of Louisville, in the said State of Kentucky. Glenmore Distilleries Company was incorporated under the laws of the State of Kentucky in 1901. James Thompson & Bro. was incorporated under the laws of the State of Kentucky in the year 1905. On or about August 17, 1927, Thompson Holding Company was incorporated under the laws of the State of Kentucky. On October 14, 1927, Glenmore Distilleries Company, James Thompson & Bro. and Thompson Holding Company were merged under the provisions of the Kentucky statutes and the consolidated corporation resulting therefrom is Glenmore Distilleries Company, the plaintiff herein. Plaintiff is the successor to all the property rights and interest of each and all of said merged corporations, including all the right, title and interest in and to the goodwill and trade-marks of James Thompson & Bro. At the time of said merger James Thompson & Bro. was then, and for many years theretofore had been, engaged in the distilling of whiskey, which was distributed and sold in the State of Kentucky as well as elsewhere in the United States in interstate commerce. In the year 1903 James Thompson & Bro. adopted as a trade-name for its whiskey the words "Kentucky Tavern", which trade-mark it thereafter continuously applied to whiskey of its own manufacture and use and circulated same in interstate commerce in connection with the sale of its product. On September 15, 1916, James Thompson & Bro. filed with the Commissioner of Patents an application for the registration of the trade-mark "Kentucky Tavern" for whiskey and thereafter a certificate of registration of said trade-mark, No. 114,576, was issued by the Commissioner of Patents to James Thompson & Bro. under date of December 19, 1916. Upon the said consolidation or merger of James Thompson & Bro. with plaintiff, Glenmore Distilleries Company, as aforestated, said registered trade-mark No. 114,-576 was assigned to plaintiff and such assignment was recorded in the United States Patent Office under Liber O–161, Page 369.

Said trade-mark "Kentucky Tavern" has been applied to straight bourbon whiskey bottled in bond at 100 proof by plaintiff and its predecessor in title and the whiskey bearing said trade-mark has been sold and distributed throughout the United States in interstate commerce and has been, and is now being, sold in the State of Virginia. Said trade-mark "Kentucky Tavern" is applied by plaintiff to bottles containing its whiskey by means of labels affixed thereto, and by printing same on cartons, cases and packages containing the goods and by means of stencils on the ends of barrels.

On or about July 11, 1934, Penn-Maryland Corporation, a Delaware corporation, adopted the trade-mark consisting of the word "Town Tavern" for whiskey. In or about January, 1936, Penn-Maryland Corporation was dissolved and defendant herein by corporate succession became the owner of all of the assets, trade-marks, trade-names and goodwill of the business in connection with which they were used, including said trade-mark "Town Tavern", and whiskey bearing said trade-mark has been sold by Penn-Maryland Corporation and its successor, the defendant herein, continuously and extensively throughout the United States in interstate commerce, including the State of Virginia, since on or about July 11, 1934. On or about September 18, 1934, plaintiff notified Penn-Maryland Corporation that plaintiff considered the trade-mark "Town Tavern" to be an infringement of the trade-mark "Kentucky Tavern" and requested Penn-Maryland Corporation to discontinue the use of the trade-mark "Town Tavern", but Penn-Maryland Corporation thereupon notified plaintiff that it did not consider it was violating any alleged rights of plaintiff and refused to discontinue the use of the trade-mark "Town Tavern". On or about January 18, 1935, plaintiff filed suit against Penn-Maryland Corporation in the United States District Court for the District of Delaware upon the same cause of action as is alleged in the bill of complaint in this suit. Penn-Maryland Corporation filed its answer to that suit on February 7, 1935, denying plaintiff's claim. On April 26, 1935, and while said Delaware suit was pending, Penn-Maryland Corporation filed an application in the United States Patent Office to register its trade-mark "Town Tavern" and such application was published in the Official Gazette of the Patent Office on June 11, 1935. On June 26, 1935, plaintiff filed a notice of opposition to such

application for registration of the trade-mark "Town Tavern". On August 10, 1936, the Examiner of Interferences rendered his decision in said Patent Office proceeding, in which he stated that, because Penn-Maryland Corporation had not, in accordance with the rules, printed its depositions taken in Louisville, the Examiner of Interferences had not considered same in arriving at his decision. The Examiner of Interferences in his decision sustained such notice of opposition and held that "Town Tavern" should not be registered as a trade-mark because "there is at least reasonable doubt that confusion would be likely to result from concurrent use of these marks". On June 26, 1935, without notice to Penn-Maryland Corporation or its attorneys, plaintiff obtained an order of the Delaware court dismissing, without prejudice, the bill of complaint in 'said Delaware suit. Penn-Maryland Corporation and its successor, defendant herein, never ceased using the trade-mark "Town Tavern", and thereafter, and on April 21, 1937, plaintiff instituted this suit.

In the years 1911 to 1919, both inclusive, plaintiff's predecessor in title sold 10,676 cases of "Kentucky Tavern" whiskey at an aggregate price of $111,640.36 and 61,060 barrels of "Kentucky Tavern" whiskey at an aggregate sales price of $2,591,672.75. In the years 1920 to 1933, both inclusive, plaintiff and its predecessor in title sold 123,687 cases of "Kentucky Tavern" whiskey at an aggregate sales price of $3,635,-045.72 and 144 barrels of "Kentucky Tavern" whiskey at an aggregate sales price of $28,780.50. In the years 1934 to 1937, both inclusive, plaintiff sold 64,788 cases, or about 1,300,000 bottles of "Kentucky Tavern" whiskey at an aggregate sales price of $2,994,015.09. From November 9, 1910, to December 31, 1918, plaintiff's predecessor in title spent the sum of $59,-117.34 in advertising "Kentucky Tavern" whiskey, of which $1,440.17 represented the amount spent for newspaper advertising. From June 1, 1934, to December 31, 1937, plaintiff spent $230,873.39 in advertising its "Kentucky Tavern" whiskey, of which $37,-793.55 was spent in newspaper advertising. From on or about July 11, 1934, to December 31, 1937, defendant and its predecessor in title sold 1,735,752 cases, or about 35,-000,000 bottles, of "Town Tavern" whiskey at an aggregate sales price of $20,781,720.-67 and in the same period defendant and its predecessor in title spent $1,674,949.13 in advertising "Town Tavern" whiskey, of which $1,148,544.22 was spent in newspaper advertising.

At and prior to the date of adoption of the trade-mark "Kentucky Tavern" by plaintiff's predecessor in title at least three other parties had used or were using trade-marks containing the word "Tavern" as a part thereof upon distilled alcoholic liquors, to-wit: Joseph A. Magnus & Company of Cincinnati, Ohio, which was using the trade-mark "Ye Old Tavern" upon whiskey; Mallard Distilling Company of Montgomery, Alabama, and New York, N. Y., which was using the trade-mark "Red Tavern" on whiskey and gin; and Fleischmann Company, which was using the trade-mark "White Tavern" on gin.

Plaintiff's "Kentucky Tavern" whiskey is a bottled-in-bond bourbon whiskey and is sold at an age of at least four years, and during the time that defendant's "Town Tavern" whiskey has been on the market the price of "Kentucky Tavern" whiskey has ranged from about $2.45 per pint to about $3 per pint. During all of the time that the defendant's "Town Tavern" whiskey has been on the market it has been exclusively a rye whiskey except that during a part of the year 1937 about 160,000 bottles of bourbon whiskey marked "Town Tavern" were sold by defendant. Defendant's "Town Tavern" whiskey has never been sold at an age of more than two years and its price has generally been under $1 per pint.

The suit is one for technical trade-mark infringement. The specific act of which the plaintiff complains is the adoption and use by the defendant of a trade-name containing the word "Tavern". Plaintiff does not claim that such adoption was fraudulently made, and there is no claim that defendant's label or package simulates the label or package of the plaintiff. Neither is there any claim that the defendant has engaged in any unfair competition except as a technical trade-mark infringement may be said to be unfair competition.

The defenses asserted by the defendant are: (1) "Kentucky Tavern" is not a valid technical trade-mark; and (2) No infringement. In the view I take of the case it will only be necessary to consider the second defense and to determine whether the use by the defendant of "Town Tavern" as a trade-name for whiskey is an infringement of "Kentucky Tavern" used by the plaintiff as a trade-mark for whiskey. The infringement of a trade-mark consists

of its use or imitation by another in the sale of his goods in such manner that the purchasers of such goods are deceived, or liable to be deceived, and induced to believe that they are manufactured and sold by the owner of the trade-mark. The general rule in determining whether an infringement exists is that the resemblance must be so close that it is likely to confuse the purchaser exercising ordinary caution in his dealings. When this occurs injunctive relief will be granted on the principle that the defendant should not be permitted to sell his goods as the goods of the plaintiff, thus misleading the public to the injury of the latter.

 In determining whether there has been an infringement, the reported cases are helpful only insofar as they lay down general principles. The question of infringement must be determined upon the particular facts of the case in hand. A decision by the Patent Office that there is likelihood of confusion between the two is persuasive but not conclusive. John Morrell & Co. v. Doyle, 7 Cir., 97 F.2d 232, April, 1938.

Equity does not absolutely insure the consumers of the plaintiff's article against deceit. It grants no relief unless the similarity between the two marks is of a character to deceive the casual consumer while exercising due caution ordinarily used in the purchase of such articles. McLean v. Fleming, 96 U.S. 245, 24 L.Ed. 828.

 In determining whether there is likelihood of confusion the judgment of the eye and ear is more satisfactory than evidence from any other source as to the possibility of parties being misled so as to take one article for the other. Liggett & Myers Tobacco Co. v. Finzer, 128 U.S. 182, 9 S.Ct. 60, 32 L.Ed. 395. It is only in doubtful cases that actual instances of confusion may be helpful in arriving at correct decisions. Valvoline Oil Co. v. Havoline Oil Co., D.C., 211 F. 189.

 In determining the confusion or likelihood of confusion resulting from the use of a similar trade-mark, the marks must be viewed in their entirety. John Morrell & Co. v. Hauser Packing Co., 9 Cir., 20 F.2d 713; Beckwith v. Com'r of Patents, 252 U. S. 538, 40 S.Ct. 414, 64 L.Ed. 705; Van Camp Sea Food Co., Inc., v. Westgate Sea Products Co., 9 Cir., 28 F.2d 957.

 Where the competing trade-marks each consists of two words, the last word in each being the same and the first word in each being distinctly different, the great weight of authority is that no infringement exists. In Coca-Cola Company v. Carlisle Bottling Works, 43 F.2d 101, D.C.Ky., affirmed, 6 Cir., 43 F.2d 119, certiorari denied 282 U.S. 882, 51 S.Ct. 86, 75 L.Ed. 778, the Court held that Roxa-Cola did not infringe Coca-Cola. In the District Court opinion Judge Cochran said at page 114: "I think, therefore, that I am justified in drawing from this survey the general rule that in such cases where the front part of the two trade-marks involved differ in appearance, sound, and meaning, there is no infringement even though there may be similarity amounting to identity in the last parts. It is only a very exceptional case which will not be governed by this rule".

See also Gold Dust Corp. v. Hoffenberg, 2 Cir., 87 F.2d 451, holding "Silver Dust" did not infringe "Gold Dust"; Armour & Co. v. Louisville Provision Co., D.C., 275 F. 92, affirmed 6 Cir., 283 F. 42, certiorari denied 260 U.S. 744, 43 S.Ct. 164, 67 L.Ed. 492, holding that "Southern Star" did not infringe "Armour's Star"; Sears-Roebuck & Co. v. Elliott Varnish Co., 7 Cir., 232 F. 588, holding that "Never Leak" did not infringe "Roof Leak"; Proctor & Gamble Co. v. Globe Refining Co., 6 Cir., 92 F. 357, holding that "Everybody's Soap" did not infringe "Every-Day Soap"; Eskimo Pie Corp. v. Honeymoon Pie Corp., D.C., 25 F.2d 154, holding that "Honeymoon Pie" did not infringe "Eskimo Pie".

In the light of the foregoing rules of decision laid down by the authorities, I now revert to a consideration of the question of infringement. Should the defendant be enjoined on the ground that "Town Tavern" infringes "Kentucky Tavern"?

 In the brief of counsel for the plaintiff it is stated that the sole issue in this proceeding is whether the trade-mark "Town Tavern" as used by the defendant is likely to cause confusion in the trade or in the minds of the purchasing public with the registered trade-mark "Kentucky Tavern" of the plaintiff, both used in connection with whiskey. Much testimony was taken on this issue. In the brief of counsel for the plaintiff references are made to instances in the evidence which, it is claimed, establish confusion or likelihood of confusion. I have read the evidence to which the briefs refer. In my opinion the testimony does not measure up to that standard of proof which is required to justify a

932

court in granting equitable relief in a suit for technical trade-mark infringement. Since the year 1934, when the defendant adopted the trade-mark "Town Tavern", there have been millions of sales of whiskey of the plaintiff and defendant under their respective trade-marks. Considering the volume of the product made and sold, the instances of alleged confusion appear insignificant. Actually only one witness was offered who was a member of the purchasing public. In the other instances the evidence is the testimony of persons other than purchasers relating to confusion of careless purchasers who, upon the exercise of ordinary care in their purchases, became ordinary purchasers, lost their confusion and actually received the whiskey they wanted. The standard of proof which the law requires is not met by evidence of thoughtless acts of inattentive persons. In order to grant injunctive relief the court must be convinced that ordinary purchasers, buying with ordinary caution, are likely to be misled.

Not only does the evidence fail to establish likelihood of confusion, but the judgment of the eye and ear make inescapable the conclusion that "Kentucky Tavern" is not infringed by "Town Tavern". The first word in each mark bears no resemblance in meaning, sight or sound, and the only similarity in the two trade-marks arises from the use in each of the identical word as the second part of the name. When two competing marks each consists of two words, the last words being identical and the first words being different in meaning, sight and sound, the dissimilar words render the trade-marks, viewed in their entirety, clearly distinguishable to the eye and ear.

Nor can I agree, as the plaintiff contends, that the plaintiff is entitled to protection, because the name "Tavern" has been so long and exclusively identified with its product as to have acquired a secondary meaning indicating its product alone. All that the first user of a name which has acquired a secondary meaning can insist upon is that no one shall use it against him in an unfair way. It is not claimed that the defendant in this case has engaged in any unfair competition except as a technical trade-mark infringement may be said to be unfair competition. If it be assumed, as the plaintiff claims, that its name has acquired a secondary meaning, yet in the absence of a showing of confu-

sion in the minds of the purchasing public from the mere similarity of plaintiff's and defendant's trade-marks, the plaintiff is not entitled to injunctive relief. Bliss, Fabyan & Co. v. Aileen Mills, 4 Cir., 25 F.2d 370.

An order may be presented dismissing the bill, with costs to the defendant.