## NATIONAL PUB. CO. v. JOHN A. HERTEL CO.

### No. 6857.

Circuit Court of Appeals, Seventh Circuit.
June 8, 1939.

Rehearing Denied July 13, 1939.

Irvin J. Bendiner, of Philadelphia, Pa., and James F. Oates, Jr., and Daggett Harvey, both of Chicago, Ill. (Sidley, McPherson, Austin & Burgess, of Chicago, Ill., of counsel), for appellant.

William W. Seagle, of Indianapolis, Ind., and Delbert A. Clithero, Herman A. Fischer, Carlton L. Fischer, and Raymond P. Fischer, all of Chicago, Ill., for appellee.

Before SPARKS, MAJOR, and TREANOR, Circuit Judges.

TREANOR, Circuit Judge.

This is an appeal from a judgment against plaintiff entered in a suit brought by plaintiff to restrain the defendant upon the theory that defendant was misappropriating plaintiff's property rights and also engaging in unfair competition with the plaintiff. The District Court sustained the defendant's motion to dismiss plaintiff's complaint, as amended, and dismissed the suit for want of equity.

The following facts, in addition to others which will appear in the course of our discussion, are relied upon by plaintiff. Since 1905 the plaintiff and its predecessor have been publishing and selling throughout the United States a Bible known as "King James Bourgeois Type Teacher's Bible"; and the plaintiff has built up a substantial good will and an excellent reputation in the bible trade. The plaintiff owns a set of electro-type plates for use in the printing of the Old and New Testaments of King James Bourgeois Type Teacher's Bible, a set of plates for the Concordance, and a set for a Dictionary of the Bible, all of which are used in the manufacturing of the King James Bourgeois Type Teacher's Bible. From 1927 through 1935 the plaintiff printed and manufactured certain Bibles for the defendant in accordance with the terms of written contracts which were entered into from time to time. The contracts uniformly provided that plaintiff was to manufacture a special edition of "Standard Reference Indexed Bible" for the defendant. This Bible was sold in the trade by the defendant as a Bible of its own publication and without any notice to the trade that

the plaintiff had any interest therein as a producer or publisher. The title "Standard Reference Indexed Bible" was the exclusive title of the defendant. In the manufacture of Bibles for the defendant the plaintiff used its own electro-type plates for the printed matter consisting of the Old and New Testaments, the Concordance, and the Dictionary of the Bible; but in addition to the foregoing plaintiff also used plates of the defendant for the printing of approximately 350 pages of copyrighted matter belonging exclusively to the defendant. The last contract for the manufacture of an edition of the Standard Reference Indexed Bible for the defendant was entered into March 29, 1935. Subsequently, the defendant, by means of a photo-lithographic or plano-graphic process,[1] began to make facsimile duplicates of the "Standard Reference Indexed Bible" and has sold and is continuing to sell such reproductions in competition with the plaintiff's "King James Bourgeois Type Teacher's Bible." The Bibles so produced by the defendant are, as to the Old Testament, New Testament, Dictionary and Concordance, facsimiles of those printed by the plaintiff from its electro-type plates "in particular as to form and typography." The reproductions, however, are inferior in quality of printing and readability to those printed by the plaintiff and to those formerly manufactured by the plaintiff for the defendant to be sold under the exclusive title "Standard Reference Indexed Bible." Plaintiff alleges that the production and sale of such reproductions by the defendant has caused, and if not restrained will continue to cause, confusion in the bible trade, and has resulted, and if not restrained will continue to result, in the erroneous belief that the said inferior reproductions are Bibles printed by the plaintiff, thereby seriously injuring the good will and excellent reputation of the plaintiff among the bible trade and with the public generally.

The plaintiff further avers that the Bible now being offered by the defendant in the trade "known as the 'Blue Ribbon Bible', contains a presentation page upon which is printed a facsimile seal and blue ribbon with a marking within said facsimile seal 'Awarded the Blue Ribbon at the Texas Centennial Celebration, Dallas, Texas, 1936' and (that) upon the copyright page of said Bible is a notation that the copyrightable portion of said text was copyrighted in 1926, 1928, 1930, 1937, by John A. Hertel Company." The plaintiff further avers that the Bible "known" by the defendant as the Blue Ribbon Bible is a facsimile reproduction of the electro-type plate owned by the plaintiff, and that the Bible which received the Blue Ribbon Award in 1936 was the Bible manufactured by the plaintiff for the defendant from the original electro-type plates "as to the New Testament, the Old Testament, the Dictionary and the Concordance, and not the facsimile reproduction thereof as represented by the defendant."

The plaintiff was permitted to add the following amendment to its bill of complaint: "The defendant, by means of such reproduction, is enabled to manufacture bibles which are facsimile duplicates, as aforesaid, at a lower cost to the defendant than the price which defendant would be required to pay for the manufacture of such bibles by plaintiff by the use of plaintiff's valuable electrotype plates."

Plaintiff's general proposition is stated thus: "The plaintiff has a property right which is entitled to protection against the defendant's actions in reproducing identically the pages in plaintiff's Bible by a photographic process and then selling the Bibles so reproduced by it in competition with the plaintiff." But in determining whether plaintiff has a property right which is entitled to protection against the defendant's conduct it is necessary to consider the relationship of plaintiff and de-

---

[1] The plaintiff summarizes the process as follows: "The copy, such as a page from the Bible, is photographed, a positive image of the photograph being printed on a zinc plate. The zinc plate is treated in such a way that when a greasy or gelatinous substance is applied to the plate it adheres to the plate in the pattern of the letters of the image but does not adhere to the rest of the plate, consisting of the space between the letters. The zinc plate is then bent around a cylinder and ink is applied to it. The ink remains only on the portion of the plate covered with the gelatin or greasy substance in the pattern of the letters. The cylinder then revolves against a rubber roller, transferring the ink from the letters on the plate to the rubber roller. The rubber roller revolves against the paper to be printed and leaves on it a reproduction in ink of the page forming the image of the zinc plate. The letters are not impressed into the paper as in ordinary letterpress printing, nor do they stand out as in engraving."

fendant under the contracts which are set out and made a part of the complaint. Plaintiff does not claim the protection of a copyright of its Bible, the King James Bourgeois Type Teacher's Bible, the printed matter of which includes only the Old and New Testaments, the Dictionary, and Concordance. It is admitted that no such copyright exists. The gist of the wrong complained of is that the defendant, in effect, is using plaintiff's plates without compensation as a means of producing inferior facsimiles, or imitations, of plaintiff's Bible for the purpose of selling such imitations in competition with the plaintiff's Bible.

If it were not for the prior transactions between plaintiff and defendant we would have a case at least analogous to the case of Dutton & Co. v. Cupples[2] and Fonotipia, Ltd. v. Bradley,[3] both of which are relied upon by the plaintiff. In the Cupples case the plaintiff had published a set of books which contained well known poems and hymns, especially adapted for sale during the Christmas season. The books were illustrated with illuminated capitals and types adapted from those used in ancient writings, and contained pictures in colors, some of which were the product of the plaintiff's artists. After these books attained a general success, the defendants published and placed on the market a similar series of books which had been produced by photographic process from the plaintiff's books. The New York court granted injunctive relief. The court was of the opinion that it was violative of the rule of fair trade and fair competition, as established and enforced, to produce and offer for sale "such identical copies (save in artistic merit and workmanship) of the books which plaintiff had published and for which it had created a profitable demand." The court pointed out that the "purpose of publishing such copies was to trade upon the favorable reputation which plaintiff had established for its books, to deceive many purchasers into the belief that they were purchasing plaintiff's books, and to damage plaintiff by the unfair use of its ingenuity in devising the general makeup of its books, and of its success in placing the books upon the market."

In the Bradley case, supra, the plaintiffs were producers of talking machine records and the defendant was in the business of selling such records. The testimony established that the defendant made its records merely by reproducing the plaintiff's records and then selling these reproduced records at about half the price of the plaintiff's. Injunctive relief was granted, apparently on the theory that the conduct of the defendant constituted an unfair taking of the plaintiff's property. In neither of the foregoing cases was there any question of protecting copyrighted material of the plaintiff. On the other hand there had been no prior commercial dealings between plaintiff and defendant.

In the instant case we are presented with the question of whether there was any appropriation of the property, or work, of the plaintiff to be used in competition with plaintiff. It appears from the allegations of the complaint and the terms of the various contracts that the copies of the Bible which are being sold by the defendant are in fact reproductions of the Standard Reference Indexed Bible, all the copies of which belonged to the defendant and which were printed by plaintiff for the defendant to be sold in trade as goods of the defendant. They were never known to the trade or to the public generally as goods of the plaintiff. Approximately 350 pages of the material were printed from plates belonging to the defendant and this material was copyrighted by the defendant. There are no facts alleged which show any distinctive or original ideas as to form and arrangement of that part of the Standard Reference Indexed Bible which is printed from the plates belonging to the plaintiff. The term "Bourgeois Type" designates a standard printers type and the use of such type does not impart a distinguishing or unique feature to plaintiff's Bibles. The facts disclose neither originality nor uniqueness of arrangement of the text of the Old and New Testament or of the Dictionary and Concordance, as found in plaintiff's Bourgeois Type Teacher's Bible. It is perfectly clear from the facts alleged that the defendant, without violating any legally protected interest of the plaintiff, could have produced and sold perfect copies of the "Standard Reference Indexed Bible" by causing electro-type plates to be made for the printing of all of the material contained in the Standard Bible. In such a case it could not be said that the defendant would be making reproductions or facsimiles of plaintiff's Bible. The defendant in fact would be making reproductions of its own Bible, although the similarity as respects artistic merit and workmanship

---

[2] 117 App.Div. 172, 102 N.Y.S. 309, 312.

[3] C.C., 171 F. 951.

would more nearly approximate that of the plaintiff's Bible than is true of the Bibles which defendant is producing by the photo-lithographic or plano-graphic process.

In the Cupples case, supra, the defendant produced imitations of plaintiff's books from copies which defendant had purchased ostensibly for noncommercial purposes. In the instant case the defendant became the owner of copies of the Standard Reference Indexed Bible for commercial purposes with knowledge by the plaintiff that such copies would be sold in competition with all other editions of the Bible, including plaintiff's King James Bourgeois Type Teacher's Bible, the plaintiff also having knowledge that defendant's Reference Indexed Bible would be identified exclusively as a publication of defendant company and would be known in the trade as a publication of the defendant. It cannot be inferred from the facts, as was concluded by plaintiff, that the production and sale of defendant's reproductions of its own Bible will cause confusion in the bible trade as respects plaintiff's Bible, or will result in the erroneous belief "that the said inferior reproductions are Bibles printed by the plaintiff, thereby seriously injuring the good will and excellent reputation of the plaintiff among the bible trade and with the public generally." In the Cupples case, supra, the court stated that the "obvious purpose of publishing such copies was to trade upon the favorable reputation which plaintiff had established for its books, to deceive many purchasers into the belief that they were purchasing plaintiff's books * * *." But in the instant case we must infer from the allegations, including the terms of the various contracts, that the use of the reproductions by the defendant cannot enable the defendant to trade upon the favorable reputation of the plaintiff's publications or to deceive purchasers into the belief that they are purchasing plaintiff's Bible. The most that can be inferred is that in the bible trade the inferior reproductions will be confused with the earlier editions of defendant's Standard Reference Indexed Bible, and that the defendant will gain some financial advantage by reason of the fact that it can "manufacture Bibles which are facsimile duplicates * * * at a lower cost to the defendant than the price which defendant would be required to pay for the manufacture of such bibles by plaintiff by the use of plaintiff's valuable electrotype plates."

The course of dealing between the plaintiff and the defendant gives to this case a striking similarity to Favorite Mfg. Co. v. Portland Mfg. Co.[4] In that case the plaintiff had manufactured motors for the defendant which the defendant had sold under its own trade name "Portland." After the termination of the manufacturing contract, the defendant obtained motors manufactured elsewhere which motors were similar to the motors formerly manufactured by the plaintiff. The plaintiff contended that by the use of the trade name "Portland," which had been applied formerly to motors manufactured by the plaintiff, the public was deceived as to the origin of the motors. A demurrer to the bill of complaint was sustained and the judgment of the trial court was affirmed by the Court of Appeals, which summed up its reasons for affirming as follows: "In any event, it appears that for more than one and perhaps for two years the Favorite Company had joined in putting out these goods as the goods of the Portland Company * * *. So far as the bill indicates, all the existing trade and customers for this article were justified in supposing that it was the product of the Portland Company, and this belief had been created by not only the acquiescence but the act of the Favorite Company. Under such circumstances, it is not apparent how there could be any public deception of which the Favorite Company could complain. For this reason, if for no other, the bill fails to state a good case."

A similar question was involved in the case of Sears, Roebuck & Co. v. Elliott Varnish Company.[5] The Elliott Varnish Company for some years made roof paint for Sears, Roebuck & Co., which paint was sold by the latter under its special brand name "Never Leak." Later Sears, Roebuck & Co. began to purchase its roof paint from another manufacturer and to sell this paint under the trade name "Never Leak." This Court held that no cause of action was disclosed by the bill of complaint since it had not disclosed that the public knew that the Elliott Varnish Co. was the actual manufacturer of the original "Never Leak" paint. And in the case of Darwin & Milner, Inc., v. Kinite Corp.[6]

[4] 6 Cir., 208 F. 542, 543.

[5] 7 Cir., 232 F. 588.

[6] 7 Cir., 72 F.2d 437, 439.

226

the plaintiff sought to restrain the defendant from continuing to use "Kinite" as a trade mark. The allegations disclosed that the defendant had sold under the name "Kinite" certain castings made from a steel alloy manufactured by the plaintiff and that the defendant later adopted a new formula of the alloy and purchased steel elsewhere, continuing to sell the castings made from the different alloy under the name "Kinite." The District Court granted an injunction and this Court reversed the decree with the following statement: "In regard to the allegation of unfair competition, the record shows that appellant and appellee each sold its respective products under its own individual trade-marks, and we are at a loss to understand how the act of appellee in changing the formula of the product which it is selling under its own trade-mark can amount to unfair competition."

Plaintiff's allegations in respect to defendants use of a presentation page upon which "is printed a facsimile seal and blue ribbon" do not disclose any cause of injury therefrom. Apparently the "Blue Ribbon Award" was made to the defendant for one of its "Standard Reference Indexed Bibles." The basis of the award is not disclosed. It does not appear that plaintiff's Bourgeois Type Teacher's Bible has been known to the trade as a "Blue Ribbon Bible," or that plaintiff ever represented to any one that any type of Bible published by it had been known as a "Blue Ribbon Bible." Assuming that defendant's use of the presentation page with the facsimile seal and blue ribbon amounts to misrepresentation, the allegations fail to show any injury to plaintiff.

We conclude that the District Court did not err in sustaining defendant's motion to dismiss plaintiff's complaint and in dismissing plaintiff's suit.

Judgment of the District Court is affirmed.